FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2022 JAN 26 AM 11: 44

U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| Jonathan Verrier )<br>     PLAINTIFF )<br>v. )<br> )<br>BETH ISRAEL DEACONESS HOSPITAL, )<br>PLYMOUTH COUNTY CORRECTIONAL FACILITY, )<br>CHARLES D. BAKER, Governor of the )<br>Commonwealth of Massachusetts; )<br>MASSACHUSETTS DEPARTMENT OF )<br>CORRECTION; )<br>THOMAS TURCO, Individually and as )<br>Commissioner of the Massachusetts Department of Corrections; )<br>MELVIN SPRAGUE, Individually and as Superintendent of the )<br>Plymouth County Correctional Facility; )<br>JOHN DOE; and )<br>JANE DOE )<br>     DEFENDANTS ) | **C O M P L A I N T** |

## COMPLAINT AND JURY TRIAL DEMAND

### PARTIES

1. Plaintiff, Jonathan Verrier, is an individual residing at 43 Forest Glen Road, Hyannis, MA.

2. Defendant, Plymouth County Correctional Facility, (hereinafter, "PCCF") is a duly organized corporation, having done business within the Commonwealth of Massachusetts at all times relevant, and maintaining a place of business located at       .

3. Defendant, Beth Israel Deaconess Hospital, (hereinafter, "Beth Israel") is a Massachusetts, hospital principal place of business at 330 Brookline Avenue Boston, MA 02215. However he was transported to the Plymouth location at 275 Sandwich St. Plymouth, MA

4. Defendant Charles D. Baker is the Governor of the Commonwealth of Massachusetts. Defendant Baker maintains an office at the Massachusetts State House, Office of the Governor, Room 208, Boston, Massachusetts 02133. Defendant Baker is sued in his individual and official capacity.

5. Defendant Massachusetts Department of Correction ("DOC") is an executive department

1

of the Commonwealth of Massachusetts. It is a "public entity" within the meaning of the ADA. *See* 42 U.S.C. § 12131(1).

6. Defendant Thomas Turco is the DOC Commissioner. By statute, Defendant Turco is responsible for the administration of all correctional facilities in Massachusetts. *See* Mass. Gen. Laws. ch. 124, § 1. At all relevant times, Defendant Turco maintained an office at DOC Central Headquarters, 50 Maple Street, Suite 3, Milford, Massachusetts 01757. Defendant Turco is sued in his individual and official capacity.

7. Defendant Melvin Sprague is the Superintendent at Plymouth County Correctional Facility ("PCCF"). By statute, Defendant Sprague was designated "responsible for the custody and control of all prisoners" at PCCF. Mass. Gen. Laws. Ch. 124 § 14. Under DOC policy, he is "ultimately responsible for the overall functioning of the institution." 103 DOC 101.01 (October 2013). Defendant Sprague maintains an office at the Massachusetts Treatment Center, 30 Administration Road, Bridgewater, Massachusetts 02324. Defendant Sprague is sued in his individual and official capacity.

8. Defendants John Doe and Jane Doe represent unknown parties described by their roles and actions hereinbelow, including, without limitation, the doctor and nurse at Beth Israel, and corrections officers and prison guards and employees at the incarceration facilities. The beth isreal students who surrounded him with the doctor doing a manual body cavity search

9. The defendants are collectively referred to herein as "Defendants."

## INTRODUCTION AND FACTUAL BACKGROUND

10. Plaintiff was imprisoned at PCCF solely because he had been waiting to get another bed at a halfway house. He was not being held because he had been charged with or convicted of any crime., he was not provided with "inpatient care." He was put through a brief detoxification, and then simply incarcerated. He was in the hole for 6 months then pre trail block for drug court awaiting a possibility of getting another chance into a halfway house. Or full time of his offenses prior deal.

11. The staff at PCCF the Superintendent to the correctional officers treated the Plaintiff, a already convicted federal or state inmate or worse on pre trail status, as a prisoner although with far less rights than criminally convicted prisoners. Upon admission, he was required to submit to a strip search, which included a visual inspection of his oral and anal cavities as well as his testicles .A scanner that was defective All of his personal property was taken from him. He was issued a prison uniform—an orange jumpsuit that made him indistinguishable from inmates at this point he was assaulted by officers mased and tased and dragged to the dry tank. He was subjected to pat searches conducted by the guards and cell "shakedowns." And told he wasn't going anywhere for awhile. At this point he was tortured for 5 days . then spent 6 months in the hole with no contact with anyone except phone and Attorney visit in a restraint to the wall and the superintendent said he had to be in full restraints at all times

12.     Unlike convicted criminals, and pretrial detainees, Plaintiff was allowed to leave his cell only for limited outdoor recreation in a small, unsheltered outdoor cage. Plaintiff was not allowed to pray at the chapel or participate in most recreational programs or organized activities. He could not have visitors, meet with an attorney for several weeks, use a law library or canteen and generally ate in his cell.

13.     Plaintiffs was barred from participating in the prison's substance abuse treatment programs. Following detoxification, treatment is available only to men being held at MASTC or Drug Block because they have been charged with or convicted of crimes.

14.     Massachusetts is a state that imprisons people for drug and alcohol addiction. As former governor Deval Patrick has recognized, "treating those with substance abuse as prisoners is wrong."[1] It is also illegal. Treating Plaintiffs as criminals instead of as people with a disability requiring professional inpatient care violates their rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") to be free from discrimination.

15.     The treatment of the Plaintiff clearly violated his civil rights. See, 42 U.S.C. Section 1983 and M.G.L. c. 258.

## JURISDICITION & VENUE

16.     Plaintiff was civilly committed under Massachusetts General Law Chapter 123, Section 35, ("Section 35") for inpatient treatment of substance use disorders to the Massachusetts Alcohol and Substance Abuse Center ("MASAC") at MCI Bridgewater. Defendants refused to provide him with treatment mandated by law. Instead, Defendants transferred the Plaintiff to the Massachusetts Treatment Center ("MTC"), a prison for the most dangerous sex offenders in Massachusetts, where he was held under punitive conditions and without treatment.

17.     Department of Correction policies mandate that individuals civilly committed under Section 35 be afforded an individualized treatment plan and a minimum of 20 hours per week of substance use specific programming. In violation of these policies, Plaintiff had no treatment plan and no substance use programming. He could not even attend Alcoholics Anonymous or Narcotics Anonymous meetings.

18.     Plaintiffs was confined to his cell for twenty to twenty-four hours a day and lived under conditions of confinement that are even more harsh and restrictive than the conditions of the convicted sex offenders also residing at MTC.

19.     Defendants even failed to conduct the periodic reviews of the necessity of Plaintiffs' continued commitment required by Section 35.

---

[1] Remarks at Reform, Re-entry and Results: Change and Progress in the Massachusetts Criminal Justice System (Feb. 20, 2014), available at http://www.mass.gov/governor/pressoffice/speeches/0220-re-entry-forum-remarks.html. See also, https://www.wbur.org/news/2014/02/21/state-house-roundup-crime-and-punishment

20. Plaintiff has been traumatized and stigmatized by the incarceration without treatment in a prison for sex offenders. He was intimidated by the harsh conditions of confinement and did not understand why he was in prison, let alone a prison for sex offenders. Others who were similarly situated and sent to the sex offenders prison like Plaintiff, attempted suicide while at MTC. Plaintiff was so ashamed and humiliated that he did not let family and friends know where he was being held.

21. By confining Plaintiff at the MTC, Defendants were reinforcing the perception that the Plaintiff was a second-class citizen, unworthy of receiving treatment for his disease.

22. Prison confinement at MTC is necessarily counter-therapeutic, and introduces fear and confusion regarding the purpose of confinement. The entire experience was viewed by the Plaintiff as punishment rather than as an opportunity to begin recovery from a disease.

23. Plaintiff seeks damages due to the fact that his confinement violated rights under G.L. c. 123, § 35; the First, Eighth and Fourteenth Amendments to the United States Constitution; Equal Protection; G.L. c. 258; G.L. c. 152; 42 U.S.C. § 1983; the Massachusetts Declaration of Rights; and the Americans with Disabilities Act as well as common and other statutory law of Massachusetts.

24. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. Section 1983.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as all of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

26. Plaintiff had awareness of the abuse and dysfunction in certain of the Massachusetts correctional facilities.

27. Plaintiff, out of an abundance of caution and reasonable distrust in the system, secreted his legitimately prescribed medication in his rectum.

28. The medication, Suboxone,[2] had been prescribed to Plaintiff by a highly respected, licensed medical facility, Baystate Mental Health, Brockton, MA, as part of his recovery program from his opioid addiction.

---

[2] Suboxone contains a combination of buprenorphine and naloxone. Buprenorphine is an opioid medication, sometimes called a narcotic. Naloxone blocks the effects of opioid medication, including pain relief or feelings of well-being that can lead to opioid abuse. Suboxone is used to treat narcotic (opiate) addiction. See, https://www.drugs.com/suboxone.html

4

29. Plaintiff's Oxycodone[3] and Heroin addictions arose from when he had been overprescribed Oxycodone at the tender age of 17 years.[4]

30. Upon arrival at PCCF, a manual body cavity search was performed, by or under the supervision, direction and control of the Defendants, without a search warrant and without Defendants applying for a search warrant.

31. Defendants made the Plaintiff spend 5 days in a dry cell with no running water, no toothpaste, no toilet paper, and without any type of or access to hygienic products or facilities, such as a shower.

32. On the third (3rd) day, Plaintiff was told that his son's mother had passed away and he was denied the right to see a priest, pray in the chapel, or to go to the wake or the funeral.

33. When being booked, five (5) corrections officers had entered the changing area with the Plaintiff and told him that he had to put on an orange jumpsuit and that he was going to a dry tank.

34. At the time, Plaintiff did not understand what was mean by a "dry tank" and it was revealed that they had been waiting for him for some reason, and told him that a confidential informant informed them that he might be hiding drugs in his anus.

35. When Plaintiff asked the five corrections officers why he was being brought to a dry tank and wanted to know what was going on, he was punched in the face from an officer to his side and was sprayed in the face with mace by the Lieutenant, and then he was jumped by all of the officers.

36. Defendants made the Plaintiff defecate and then he was forced to leave his pants down around his ankles and paraded around the facility. The Defendants forced the Plaintiff to walk through the booking office with stool on his buttocks and his pants down, in front of multiple female officers and ladies who worked there. One female worker, in particular, had gone to high school with the Plaintiff.

37. On the fifth (5th) day of being in the dry tank, after the Plaintiff had already giving them the Suboxone and thought that all of the pills had been retrieved from his body, the corrections officers were laughing at the Plaintiff and joking with each other at Plaintiff's expense, and they told the Plaintiff, "You're never getting out of there [the dry tank]."

---

[3] Oxycodone is an opioid pain medication sometimes called a narcotic. Oxycodone is used to treat moderate to severe pain. The extended-release form of oxycodone is for around-the-clock treatment of pain and should not be used on an as-needed basis for pain. See, https://www.drugs.com/oxycodone.html

[4] Plaintiff is a class claimant/member in the class action suit against Purdue, due to his having been a victim of Purdue's misused and overprescribed drug, OxyContin, which led to the Plaintiff's addictions. https://topclassactions.com/lawsuit-settlements/closed-settlements/purdue-opioid-addiction-class-action-settlement/

5

38. On the 5th day, Plaintiff saw the nurse and spoke with her about his inhumane treatment and asked her how she could allow this abusive treatment to go on with feces matter and potential hepatitis exposure and other diseases and that he, the Plaintiff, was being treated worse than hardened criminals and likened his treatment to that given to prisoners in Guantanamo Bay.

39. The nurse called it off and told the Internal Perimeter Security ("IPS"), led by Captain Nye, saying that the correctional officers' treatment of the Plaintiff was inhumane and needs to stop, and that he needs to be taken to the hospital.

40. Two corrections officers brought the Plaintiff to the Defendant, Beth Israel Hospital.

41. At Beth Israel Hospital, instead of finally receiving the proper medal treatment and medication needed to get back on track and resume his recovery program, they wanted to perform further body cavity searches on him.

42. Plaintiff told the doctor at Beth Israel that he did not consent to any further body cavity searches and refused to sign any consent forms.

43. Beth Israel made the Plaintiff get an X-ray on his stomach. It turned out that one of the medically prescribed pills still remained inside of the Plaintiff's body.

44. Plaintiff was willing to get it out himself, through defecation, but did not want any further body cavity intrusion.

45. Making matters worse, they allowed into the hospital room, young-looking medical students, both male and female, watching everything while he was being cuffed to the bed.

46. Unable to receive proper treatment, Plaintiff asked if he could just go back to the dry tank to retrieve the last remaining pill, because he did not consent to a body cavity search and because he was too embarrassed to be treated this way in front of the young medical students, but his requests were refused.

47. One of the correctional officers, officer Fernandez, stepped out of the room and made a phone call to his supervisor, and they and came back in the hospital room and told Plaintiff he couldn't leave the hospital until they get everything out of him.

48. Plaintiff told the doctor that he would try to get it out himself via a bowel movement, but the doctor said that that was not an option, that Plaintiff could have no privacy at all, and could not try to get it out himself. The doctor stated that if the Plaintiff did not allow him to enter his anus that he would have to do surgery on the Plaintiff.

49. The Plaintiff refused to give his consent to the doctor. He repeated over and over, "I do not consent!"

6

50. The Beth Israel Hospital and the doctor, without consent, humiliated the Plaintiff, restrained him with shackled to the bed, while the doctor penetrated the Plaintiff's anus multiple times in front of the corrections officers and the medical students.

51. The Plaintiff experienced much pain, degradation and humiliation while the doctor fished around knowing that he couldn't get the last remaining pill, yet he kept going back in and back and forth multiple times even after admitting that he could not grab it.

52. The doctors repeated attempts to retrieve the pill after it became known that it was not possible using his hands, were gratuitous and only for purposes of abuse and punishment of the Plaintiff, and his own sadistic gratification.

53. With Plaintiff essentially being raped, i.e., chained to the bed, shouting in protest that he does not consent, and the doctor continuing to penetrate him, both of the corrections officers got up with disgusted looks on their faces and walked out of the room.

54. The doctor had pulled down the Plaintiff's pants and put two fingers inside of him while he was crying with tears coming down his face, repeating "I do not consent to this!" All of this ordeal over retrieving the Plaintiff's prescribed Suboxone medication to keep him off of heroin or Fentanyl, medication and treatment that he was being deprived of.

55. Captain of the IPS, internal police security captain Nye, had multiple arguments with Plaintiff in the past and had threatened the Plaintiff saying "I'm gonna put you away for a long time," and "We'll see who gets f**ked."

56. The Defendants did not have the superintendent's permission, did not have or state any facts to even support probable cause, and did not have a warrant to conduct a body cavity search on the Plaintiff.

57. Plaintiff had previously been back to the Plymouth County Correctional Facility three times and every time he goes there, Captain Nye, who is out to get the Plaintiff and has said as much to the Plaintiff, makes sure that the Plaintiff is first put into a dry tank. On the prior occasions, no drugs or medication of any kind were ever found on the Plaintiff. Rather, Plaintiff is forced to go into the dry tank without legal cause, for no other purpose than to degrade, abuse and humiliate him.

58. Plaintiff never gave consent to have medical students observe him at the hospital and he never signed anything. The nurse who wanted the Plaintiff to sign something was friends with and/or knew one of the corrections officers and had been out the night before with him, and she said to the Plaintiff, "it's okay, you don't have a choice, I'll sign it for you."

59. Plaintiff after having been so humiliated and mistreated, has since suffered nightmares about doctors and is currently on PTSD medication, anxiety, depression and having multiple

7

other counseling therapists for things that he'd been going through and trying to overcome the trauma that he experienced at the hands of the Defendants.

60.     Plaintiff spoke to a psychiatrist named, "Mary," while he was in the hole for six months over this same incident and he was charged with the crime of "possession to distribute class B and deliver articles to prisoner" and was later told that if he pled guilty he would get parole but if he fought the case that he would have to stay longer, so the Plaintiff, under threat and duress, plead guilty.

61.     Following the Defendants" inhumane practices and mistreatment ordeal of the Plaintiff, the Massachusetts Correctional Facilities have been required to provide Methadone, Suboxone, and anything else that inmates are prescribed because it is known to be illegal and inhumane to make somebody go off addictive opioids "cold turkey."

62.     Plaintiff filed a PREA and called the Plymouth Police Department to ask for an investigation be to be done against the doctor for rape.

63.     They all thought it was a big joke. The corrections officers laughed at the Plaintiff anytime gloves would come out they would make fun of him, humiliated him, and left Plaintiff emotionally scarred.

64.     The IPS and captain Nye acted with complete disregard for the law, acted as if they believed they were above the law, and that they could do whatever they wanted to whomever they wanted, without any consequences.

65.     Corrections officers are meant to keep inmates safe secure and against rape or sexual harassment or sexual misconduct, yet in this instance, they forced Plaintiff to walk through booking multiple times with poop stuck to his backside with his underpants down to his ankles in front of females that worked at the jail, female correctional officers, male correctional officers, and other inmates.

66.     Even some corrections officers stated to the Plaintiff that they couldn't believe what was done to him.

## JURISDICTION

67.     The United States District Courts have jurisdiction to adjudicate lawsuits brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## EXHAUSTION OF REMEDIES

68.     Plaintiff filed complaints pursuant to administrative grievance procedures, and pursued same to completion. (e.g., 42 U.S.C. § 1997e (challenging prison conditions).

## CLAIMS FOR RELIEF

8

## COUNT I
### Violation of Mass. Gen. Laws, Ch. 123, § 35

69.     All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

70.     Contrary to the plain meaning of Section 35, Defendants housed Plaintiff at MTC, which is neither licensed nor approved by DPH, and is not mentioned in the text of Section 35 as an alternative placement. Defendants' placement of Plaintiff at MTC therefore violated Section 35.

71.     Men civilly committed under Section 35 shall be committed for the "purpose of inpatient care for the treatment of an alcohol or substance use disorder." Defendants violated Section 35 by providing Plaintiff no alcohol or substance use disorder treatment at MTC.

72.     Section 35 further provides that "[s]ubsequent to the issuance of a commitment order, the superintendent of a facility may authorize the transfer of a patient to a different facility for continuing treatment; provided, that the superintendent shall provide notification of the transfer to the committing court." Defendants' transfer of Plaintiff to a different correctional institution without notice to the committing court violated Section 35. In addition, Defendants violated Section 35 by transferring Plaintiff to a correctional institution that is not an alcohol or substance use disorder treatment facility, especially where that transfer is for punitive reasons unrelated to Plaintiff's treatment and where Plaintiff did not receive treatment upon transfer.

73.     Defendants' violations of Section 35 caused damage to the Plaintiff including extreme emotional distress and violations of his rights to equal protection, rights set forth in the First, Eighth and Fourteenth Amendments, the ADA, 42 U.S.C. Section 1983, M.G.L. c. 258, M.G.L c. 152 and other federal and state Constitutional violations and violations of statutory and common law.

74.     Plaintiff seeks damages for injuries suffered including attorney's fees and punitive damages.

## COUNT II
### Violation of Substantive Due Process Provisions of the 14th Amendment to the United States Constitution and the Massachusetts Declaration of Rights

75.     All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

76.     The Fourteenth Amendment to the United States Constitution provides that "No State shall...deprive any person of life, liberty, or property, without due process of law." Article 10 of the Massachusetts Declaration of Rights provides that "Each individual of the society has a right to be protected by it in the employment of his life, liberty and property, according to standing laws."

77. Plaintiff had a liberty interest in not being unjustly incarcerated in prison and in having grievances properly addressed.

78. Plaintiff's incarceration in prison represents a substantial departure from accepted professional judgment, practice, or standards. Plaintiff's incarceration did not bear any reasonable relation to the purpose of Section 35, which, according to the statute, is to provide for "the care and treatment of alcoholism or substance abuse."

79. By their policies, practices, and actions, Defendants violated the rights of Plaintiff to substantive due process guaranteed by Article 10 of the Massachusetts Declaration of Rights as well as the Fourteenth Amendment to the United States Constitution, as enforceable under 42 U.S.C. § 1983.

80. Plaintiff has suffered immediate and substantial injury as a result of the unlawful acts, omissions, policies, and practices of Defendants as alleged herein.

81. Defendants' violations of Section 35 caused damage to the Plaintiff including, without limitation, extreme emotional distress and violations of his rights to equal protection, rights set forth in the First, Eighth and Fourteenth Amendments, the ADA, 42 U.S.C. Section 1983, M.G.L. c. 258, M.G.L c. 152 and other federal and state Constitutional violations and violations of statutory and common law.

82. Plaintiff seeks damages for injuries suffered including attorney's fees and punitive damages.

## COUNT III
### Violation of Title II of the Americans with Disabilities Act

83. All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

84. Title II of the ADA prohibits a "public entity" from discriminating against a "qualified individual with a disability...by reason of such disability." 42 U.S.C.§ 12132.

85. Plaintiff, as an individual committed under Section 35 for substance addiction, was a "qualified individual with a disability" under Title II of the ADA, as defined in 42 U.S.C. § 12131(2) and § 12102(1).

86. Defendants, including, without limitation, DOC, Commonwealth of Massachusetts, MTC and MASAC are all a "public entity" under Title II of the ADA, as defined in 42 U.S.C. § 12131(1).

87.    Under Section 35, Plaintiff was placed in prison solely because of his disability. Plaintiff was not committed because of a criminal charge or conviction. No other citizens in Massachusetts, disabled or otherwise, are forced to endure such unjustified incarceration as a condition of receiving needed medical treatment.

88.    The imprisonment of Plaintiff under Section 35 violated Title II of the ADA by subjecting him to discrimination was solely on the basis of his disability.

89.    Plaintiff has suffered immediate and substantial injury as a result of the unlawful acts, omissions, policies, and practices of Defendants as alleged herein. Said acts, omissions, policies, and practices of Defendants as alleged herein were due to deliberate indifference or discriminatory animus.

90.    Defendants' violations of Section 35 caused damage to the Plaintiff including extreme emotional distress and violations of his right to equal protection, rights set forth in the First, Eighth and Fourteenth Amendments, the ADA, 42 U.S.C. Section 1983, M.G.L. c. 258, M.G.L c. 152 and other federal and state Constitutional violations and violations of statutory and common law.

91.    Plaintiff seeks damages for injuries suffered including attorney's fees and punitive damages. Life long trauma and ptsd . loss of being able to say goodbye to his sons mother and being there for his son who still wont forgibve him for not protecting his mother

## COUNT IV
### Violation of 42 U.S.C. Section 1983

92.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

93.    The Defendants are persons for purposes of 42 U.S.C. Section 1983.

94.    At all relevant times, the Defendants were acting under color of law and directly participated in violating Plaintiff's clearly established rights.

95.    The actions of the Defendants set forth above violated clearly established statutory and constitutional rights of the Plaintiff.

96.    The Defendants knew or should reasonably have known that they violated clearly established statutory and constitutional rights of the Plaintiff.

97.    Defendants' actions directly and proximately caused a deprivation of federally protected rights of the Plaintiff.

98.    Plaintiff seeks damages for injuries suffered including attorney's fees and punitive damages.

## COUNT V
## Violation of M.G.L c. 258

99. All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

100. At all relevant times, the DOC was a public entity of the Commonwealth and the other Defendants were same or, individually or public employees or persons holding office of the Commonwealth of Massachusetts.

101. Said Defendant employees were acting, at all relevant times, individually or within the scope of their official duties or employment.

102. Said Defendant individuals, employees and office holders violated the civil rights of the Plaintiff under state and federal law.

103. Said Defendant violations were the direct and proximate cause of damage to the Plaintiff.

104. Plaintiff seek damages for injuries suffered including attorney's fees and punitive damages.

## COUNT VI
## False Imprisonment

105. All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

106. The Defendants actions were an unlawful restraint upon Plaintiff's personal liberty.

107. Defendants restrained the Plaintiff against his will.

108. The Defendants' actions were unlawful, violated Section 35 and Department of Corrections' Regulations as above and were in violation of state and federal law and Constitution.

109. The actions were conducted with force which compelled the Plaintiff to remain where he did not wish.

110. As a direct and proximate cause of the Defendants' false imprisonment of the Plaintiff, he suffered physical, mental suffering and humiliation.

111. Plaintiff seeks damages for injuries suffered including attorney's fees and punitive damages.

## COUNT VII
## Violation of the Eighth Amendment to the U.S. Constitution

112. All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

113. As set forth above, Plaintiff had serious medical needs requiring treatment.

114. The medical needs were clearly established by the Section 35 commitment.

115. The needs were severe enough that even a lay person would recognize the need for treatment.

116. Said treatment was not provided to the Plaintiff.

117. Plaintiff was neither provided detoxification or rehabilitation concerning his substance abuse issues, nor was he provided treatment for his needs concerning his then, existing and medically prescribed recovery program.

118. The failure to provide any treatment was cruel and serious, exacerbating Plaintiff's illnesses.

119. The Defendants exhibited a wanton disregard of Plaintiff's needs and were conscious of his impending harm.

120. The lack of access to meaningful treatment was a congruent response to the history and pattern of unconstitutional discrimination to the Plaintiff.

121. As a direct and proximate cause of the Defendants' violation of the Eighth Amendment, the Plaintiff suffered physically and mentally as well as humiliation.

122. Plaintiff seek damages for injuries suffered including attorney's fees and punitive damages.

## COUNT VIII
### Violation of the First Amendment to the U.S. Constitution

123. All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

124. Plaintiff had a First Amendment right to petition for the redress of grievances.

125. Plaintiff presented many non-frivolous grievances to the Defendants.

126. Each grievance presented was denied without hearing and each appeal of a denial was denied without hearing.

127.    The Defendants' conduct inflicted actual injury to the Plaintiff.

128.    The Defendants' actions denied the Plaintiff, a disabled person, without meaningful access to grievance procedures.

129.    As a direct and proximate cause of the Defendants' violation of Plaintiff's First Amendment rights, he suffered physically and mentally as well as humiliation.

130.    Plaintiff seeks damages for injuries suffered including attorney's fees and punitive damages.

## COUNT IX
### NEGLIGENCE

131.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

132.    Defendants had a duty to properly oversee and supervise the actions of its agents, employees and legal representatives.

133.    Defendants owed a legal duty to Plaintiff.

134.    Defendants breached their duties as described herein.

135.    Defendants' actions and omissions were the proximate and actual cause of Plaintiff's damages.

## COUNT X
### Intentional/Negligent Infliction of Emotional Distress

136.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

137.    Defendants' actions were willful, wanton, oppressive, malicious, outrageous, reckless, abusive and otherwise morally culpable and support exemplary damages.

138.    Defendants engaged in wrongful imprisonment, torture, abuse, molestation, sexual misconduct, rape, mental and emotional abuse, deprived Plaintiff of medical attention and treatment, and unjustly punished Plaintiff without justification.

139.    When engaging in the conduct described herein, Defendants intended to inflict emotional distress, or negligently inflicted emotional distress upon the Plaintiff, or knew or should have known that emotional distress was the likely result of their conduct.

140.    Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in civilized community, in particular, American society wherein

Defendants actions violated well-established legal and medical laws, rules, and protocols and sought to undermine Plaintiff's constitutionally protected rights.

141.   The actions of Defendants were the proximate and actual cause of Plaintiff's distress

142.   Emotional distress suffered by Plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.

143.   The conduct of Defendants caused emotional distress to Plaintiff which resulted in mental, emotional, and physical symptoms, including, without limitation, inability to sleep, inability to sleep soundly, loss of appetite, inability to ingest normal meals, nausea, severe stomach ulcers, anxiety, depression, behavioral disorders, night terrors, and post-traumatic stress, all of which caused pain and loss of quality of life. Plaintiff suffered loss of the ability to function normally, free of mental anguish, and to focus reliably, consistently, productively and comfortably at work or any occupation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.   Issue a judgment against Defendants finding that the acts, omissions, policies, and practices of placing the Plaintiff committed solely under Section 35 to DOC facilities and their subsequent treatment were unlawful and violated the First, Eighth and Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act, Chapter 123 Section 35, Equal Protection under the Constitution of the United States, the Massachusetts Declaration of Rights, 42 U.S.C. §§ 1988 and 12132, 42 U.S.C. Section 1983 and other applicable laws and regulations;

b.   Award the Plaintiff an appropriate sum of damages, including punitive damages;

c.   The Plaintiff is also entitled to treble damages and to the costs of this action, including reasonable attorney fees pursuant to M.G.L. c. 93A, and other statutes set forth hereinabove.

d.   Award Plaintiff his reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12132, Mass. Gen. Laws ch. 93, § 103(d), Fed. R. Civ. P. 54(d), 42 U.S.C. Section 1983 and other applicable laws and regulations; and

e.   Grant Plaintiff such other and further relief as the Court considers just and proper.

**THE PLAINTIFF DEMANDS TRIAL BY JURY
AS TO ALL ISSUES RAISED BY THE COMPLAINT**

The PLAINTIFF

*[signature]*
Pro Se

Date: January 21, 2022

/s/Jonathan Verrier
Jonathan Verrier
43 Forest Glen Road
Hyannis, MA 02601
Ph. 857-333-2446
Email: jonathan.verrier@gmail.com